## KAPLAN RICE MILL, Inc., v. BALTIC AMERICAN FEED CORPORATION (MARTENIS, Intervener).

### No. 1277.

Court of Appeal of Louisiana. First Circuit.
Jan. 22, 1934.

Pugh & Buatt, of Crowley, for appellant.

E. F. Gayle, of Lake Charles, for appellee Martenis.

MOUTON, Judge.

The district judge rendered the following opinion and decree in this case:

"The plaintiff brought this suit for damages for the alleged breach of a contract,

whereby the defendant agreed to, but refused to, purchase 1,250 bags of rice at $1 per 100 pounds, f. o. b. Kaplan, La., the rice to be equal in grade to sample No. 1286, and to be shipped in April or May, 1931, at the buyer's option.

"The defendant admitted execution of the agreement sued on, but urged in defense of the suit that plaintiff did not tender rice equal in grade to the sample agreed upon; that the rice was not delivered in time, and that the plaintiff shipped the rice in question on the steamer Palatia, contrary to the orders of the defendant.

"On May 19, 1931, the defendant wrote Connell Rice & Commission Company, Inc., the broker representing the plaintiff throughout this entire transaction, to have this rice 'shipped per North German Lloyd s/s "Palatia." '

"The next day, May 20, 1931, the broker wrote the plaintiff to deliver this rice 'alongside North German Lloyd's steamer "Palatia," ' which was first scheduled to sail on June 20, but actually sailed on June 24.

"The defendant, having requested that the rice which was to be delivered f. o. b. Kaplan be shipped by the plaintiff on trucks, the plaintiff started shipping the rice the latter part of May, and completed delivery of the shipment alongside the Palatia on June 11, 1931, some thirteen days before the Palatia sailed. (Tr. 26.)

"All documents attached to the draft which plaintiff drew on the defendant, for the purchase price of the rice, were in good order, and in accordance with the contract. (Fieudenthal for def., Tr. 92, 93.)

■ "Defendant claimed that the rice delivered was not up to grade of the agreed sample, stating that the broker gave this information. (Fieudenthal, Tr. 84.)

"Defendant, itself, had this rice sampled by the Rice Millers' Association, whose certificates, 'P-4' and 'P-5' show the rice was equal to the sample referred to in the written agreement. (Tr. 84.)

"Delahoussaye, sales manager of the plaintiff company, testified that these 1,250 bags of rice were in his company's warehouse when the contract in this case was executed; that his company had only one lot of this kind of rice; that he was perfectly familiar with it; and that all of it was 'Choice Brewers Rice.' (Tr. 23, 24.) This rice was also sampled on the docks in Lake Charles, and found to be of the required grade. (Tr. 119.)

"The greatest weight of the evidence on this point is with the plaintiff, and I find that the rice was of the grade agreed upon.

"The day after the last of the rice had been shipped from Crowley to Lake Charles by truck, that is, on June 12, 1931, plaintiff drew a draft on the defendant, not only for the purchase price of the rice, but for drayage, $302.50, ocean freight $756.25, and wharfage $22.69, or a total of $1,081.44 more than the agreed purchase price. (P-6.) Attached to this draft was a negotiable bonded warehouse receipt (Tr. 17), which was to be delivered to the defendant upon payment of the draft.

■ "There is no suggestion from any source in the record that the plaintiff was requested by the defendant to pay wharfage or ocean freight, and there is very little evidence in the record to justify the conclusion that defendant asked plaintiff to pay drayage. The contract gave the plaintiff no right to pay those charges, and certainly he is not entitled to them unless he was expressly or impliedly requested to pay them, or incur them for defendant's benefit.

"In fact, the contrary appears from the record, for it abundantly appears that the plaintiff knew of defendant's instructions to the steamship company not to load this rice on the Palatia. Bone, who represented the shipping company, testified that, after he got instructions on June 19 or 20 not to ship this rice on the Palatia, he advised Delahoussaye of the plaintiff company. (Tr. 76, 77; see, also Tr. 70 to 75.) Delahoussaye admitted knowledge of these instructions, and said, 'We tried our best to stop the shipment from going aboard.' (Tr. 29, 30.) Of course, he did no such thing, for the record shows he consented to the loading of the rice, and I believe that he urged that it be loaded. He was so anxious to get it aboard the steamer, evidently thinking that action would bind the defendant, that he had the plaintiff pay the wharfage or freight on the rice, all without request or authority. (Bone, Tr. 75.) Delahoussaye admitted the payment of the freight was 'beyond the contract.' (Tr. 29.)

"It will be remembered that, while defendant's letter of May 19, 1931, requested shipment on the Palatia, the broker on May 20, 1931, wrote that the rice was to be delivered 'alongside' the Palatia, which meant, of course, in the covered part of the docks, opposite the pier where the ship was to dock. This construction is clear from the record, for no one would contend that the parties contemplated the placing of perishable stuff like rice in an exposed place by the side of the water, where the ship was to tie up, the rice to remain there from May 19 to June 24.

"Fieudenthal testified he was not certain he wanted the rice shipped on the Palatia, but he was then certain he wanted it shipped on the North German Lloyd line. (Tr. 96.) It must be presumed under these circumstances that the broker received and gave corrected instructions, when he told the plaintiff to deliver the rice 'alongside' the ship, since the broker was the agent of the plaintiff.

■■ "Of course, the tender of a negotiable warehouse receipt, attached to a draft

which called for the payment of more than $1,000 in excess of what was due, is no legal tender of the goods. (P–6.) This conduct was absolutely inconsistent with the contract, constituted an active violation of the contract, and put an end to it.

"The draft in this case, 'P–6,' was presented twice with the demand for more than $1,000 above the amount due. That the draft presented on both occasions was the same, see stamps of the Interstate Trust & Banking Company on its reverse, dated June 13, 1931, and June 19, 1931.

"For the foregoing reasons, the law and the evidence being in favor thereof:

"It is ordered, adjudged, and decreed that there be judgment herein, in favor of the defendant, rejecting plaintiff's demands at its cost, including the fee of the curator ad hoc, which is hereby fixed at $35.

"It is further ordered, adjudged, and decreed that there be judgment herein in favor of the intervener and third opponent, Carhart J. Martenis, decreeing that the rice attached in this suit, or the proceeds thereof, shall be delivered to the said intervener, to be held by him as pledge for the payment by the defendant of the note executed by the defendant on April 9, 1931, to the intervener, in the sum of $10,000."

Finding no error in the foregoing opinion and decree, of law or fact, the judgment is affirmed, with cost.